# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | |
|---|---|
| In Re:<br><br>Noland Bernard Ballard,<br><br>            Debtor. | Chapter 13<br><br>Case No. 21-10009-whd |
| THE BANK OF NEW YORK MELLON, F/K/A The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5, its successors or assigns,<br><br>            Movant,<br><br>V.<br><br>Noland Bernard Ballard, Debtor, and Allison Ballard, Codebtor, and Melissa J. Davey, Chapter 13 Trustee,<br><br>            Respondents. | Contested Matter* |

## NOTICE OF ASSIGNMENT OF HEARING

"Given the current public health crisis, hearings may be telephonic only.  Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone."

PLEASE TAKE NOTICE that THE BANK OF NEW YORK MELLON, F/K/A The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5, its successors or assigns, has filed a MOTION FOR *IN-REM RELIEF* FROM AUTOMATIC STAY AND CODEBTOR STAY and related papers with the Court seeking an order granting in rem relief from the automatic stay and Codebtor stay.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the MOTION FOR *IN-REM RELIEF* FROM AUTOMATIC STAY AND CODEBTOR STAY in **United States Bankruptcy Court, 18 Greenville Street, 2nd Floor, Newnan, GA 30263, 2nd Floor Courtroom at 9:00 A.M. on February 4, 2021.** Your rights may be affected by the Court's ruling on these pleadings. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address for the Clerk's Office is: United States Bankruptcy Court 18 Greenville Street, 2nd Floor Newnan GA 30263**.** You must also mail a copy of your response to the undersigned at the address stated below.

In the event a hearing cannot be held within thirty (30) days from the filing of said Motion, as required by 11 U.S.C. Section 362, Movant, by and through counsel, waives this requirement and agrees to the next earliest possible date, as evidenced by the signature below. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period.

The undersigned consents to the automatic stay remaining in effect with respect to Movant until the court orders otherwise.

Date: January 12, 2021                    **Logs Legal Group, LLP**

*/s/ Lucretia L. Scruggs*
Lucretia L. Scruggs
Georgia Bar No. 371008
211 Perimeter Center Parkway, NE
Suite 300
Atlanta, GA 30346
Phone: 770-220-2535
Fax: 770-220-2665
lscruggs@logs.com

**UNITED STATES BANKRUPTCY COURT**
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| In Re: | Chapter 13 |
| Noland Bernard Ballard,<br>    Debtor. | Case No. 21-10009 whd |
| THE BANK OF NEW YORK MELLON,<br>F/K/A The Bank of New York as trustee for<br>registered Holders of CWABS, Inc., Asset-<br>Backed Certificates, Series 2004-5, its<br>successors or assigns,<br><br>                    Movant,<br><br>V.<br><br>Noland Bernard Ballard, Debtor<br>Allison Ballard, Codebtor<br>Melissa J. Davey, Chapter 13 Trustee,<br><br>                    Respondents. | Contested Matter* |

**MOTION FOR RELIEF FROM STAY AND CO-DEBTOR STAY
REQUEST FOR WAIVER OF RULE 4001(a)(3) AND
MOTION FOR IN REM RELIEF AS TO THE SUBJECT REAL PROPERTY**

COMES NOW, THE BANK OF NEW YORK MELLON, F/K/A The Bank of New York

as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5, its

successors or assigns (hereinafter referred to as "Movant"), by and through its undersigned

counsel, and shows the Court as follows:

1.

This is a motion under Section 362(d) of the Bankruptcy Code for relief from the existing

stay for the purpose of foreclosing by a private power of sale contained in a certain Deed to

Secure Debt.  Movant also requests *in rem* relief pursuant to Section 362(d)(4)(B) of the

Bankruptcy Code as to the subject real property located at 25 Alexandria Circle, Newnan, GA 30265.

2.

Noland Bernard Ballard (hereinafter referred to as "Debtor"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on January 4, 2021.

3.

As collateral for a Note, Debtor and Co-Debtor, Allison Ballard (hereinafter referred to as "Co-Debtor"),  executed a Deed to Secure Debt conveying to Movant certain improved real property located at25 Alexandria Circle, Newnan, GA 30265, in Coweta County.  A copy of the Security Deed is attached as Exhibit "A".  A copy of the Assignment is attached hereto as Exhibit "B".  Debtor executed a promissory note secured by a mortgage, deed of trust, or security deed.  A copy of the Note is attached hereto as Exhibit "C". Debtor and/or Co-Debtor executed a promissory note secured by a mortgage or deed of trust.  The promissory note is either made payable to Movant or has been duly indorsed.  Movant, directly or through an agent, has possession of the promissory note.  Movant is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

4.

As of January 5, 2021, Movant alleges that the Debtor and Co-Debtor are in default to Movant under the terms of the loan documents, having failed to make certain mortgage payments that have come due.  The Debtor and Co-Debtor are currently due for the June 1, 2012 payment.  There has been no payment on the account since July 6, 2013.  The total arrearage amount is

approximately $190,334.21. The payoff amount on the loan is $341,462.71. The Debtor and Co-Debtor have combined to file 11 bankruptcy cases in the past 7 years.

The instant bankruptcy proceeding is the eleventh (11th) bankruptcy filing regarding the subject real property, to wit:

(1)   NOLAND BERNARD BALLARD, Debtor, filed Chapter 13 Case No. 14-12697, which was assigned to the Honorable W. Homer Drake, on December 1, 2014.  On March 6, 2015 the case was dismissed for failure to make plan payments.

(2)   NOLAND BERNARD BALLARD, Debtor, filed Chapter 13 Case No. 15-11876, which was assigned to the Honorable W. Homer Drake, on August 31, 2015.  An Order lifting stay on behalf of the Movant was entered on April 7, 2016. On June 9, 2016, the case was dismissed for failure to make plan payments.

(3)   NOLAND BERNARD BALLARD, Debtor, filed Chapter 13 Case No. 17-11872, which was assigned to the Honorable W. Homer Drake, on September 1, 2017.  The case was dismissed at the Confirmation Hearing on November 17, 2017 for failure to fund the plan.

(4)   NOLAND BERNARD BALLARD, Debtor, filed Chapter 13 Case No. 18-11166, which was assigned to the Honorable W. Homer Drake, on June 4, 2018. The case was filed one day prior to Movant's scheduled foreclosure sale of June 5, 2018. The case was dismissed with prejudice barring the Debtor from filing a Chapter 13 case for 180 days on October 16, 2018.

(5)    NOLAND BERNARD BALLARD, Debtor, filed Chapter 7 Case No. 19-
10426 pro se, which was assigned to the Honorable W. Homer Drake, on
March 4, 2019.  The case was filed one day prior to Movant's scheduled
foreclosure sale of March 5, 2019.  The case was dismissed on March 21,
2019 for failure to file information, no schedules were filed.

(6)    ALLISON LEWIS BALLARD, Co-Debtor, filed Chapter 13 Case No. 19-
11060, which was assigned to the Honorable W. Homer Drake on June 3,
2019.  The case was filed one day prior to Movant's scheduled foreclosure
sale of June 4, 2019.  The case was dismissed prior to confirmation on
August 12, 2019. Debtor did not appear to the 341 hearing.

(7)    ALLISON LEWIS BALLARD, Co-Debtor, filed Chapter 13 Case No. 19-
12182, which was assigned to the Honorable W. Homer Drake on November
1, 2019. No plan or schedules were filed in the case. The case was dismissed
on November 26, 2019 for failure to file information.

(8)    NOLAND BERNARD BALLARD, Debtor, filed Chapter 13 Case No. 20-
10682 pro se, which was assigned to the Honorable W. Homer Drake, on
April 6, 2020.  The case was filed one day prior to Movant's scheduled
foreclosure sale of April 7, 2020.  The case was dismissed on May 7, 2020
for failure to file information, no plan or schedules were filed.

(9)    ALLISON LEWIS BALLARD, Co-Debtor, filed Chapter 13 Case No. 20-
11002 pro se, which was assigned to the Honorable W. Homer Drake on July
6, 2020. The case was filed one day prior to Movant's scheduled foreclosure
sale of July 7, 2020. No plan or schedules were filed in the case. The case

was dismissed on September 29, 2020 with prejudice barring the Debtor from

filing a Chapter 13 case for 180 days.

(10) NOLAND BERNARD BALLARD, Debtor, filed Chapter 13 Case No. 20-

11479 pro se, which was assigned to the Honorable W. Homer Drake, on

November 4, 2020.  The halted the foreclosure preparation on the account.

The case was dismissed on November 30, 2020 for failure to file information,

no plan or schedules were filed. To date, the loan is contractually due for the

December 1, 2008 payment, which represents seventy-three (73) months of

non-payment.

5.

The instant case is the 11th active case within the past no 7 years affecting the Property.

No schedules or plan has been filed to date and the automatic stay of § 362 did not take effect.

Given the above repeat filings, many of which prevented Movant from conducting the scheduled

foreclosure sale, Movant asserts that the Debtor and Co-Debtor are attempting to delay Movant

from asserting its rights through multiple bankruptcy filings pursuant to 11 U.S.C. §

362(d)(4)(B).

6.

Pursuant to 11 U.S.C. §362(d)(1) THE BANK OF NEW YORK MELLON, F/K/A The

Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates,

Series 2004-5, is entitled to an Order terminating the Automatic Stay with respect to the property

for cause, including inter alia, lack of adequate protection of its interest therein as heretofore

described.

7.

Pursuant to 11 U.S.C. §362(d)(2), THE BANK OF NEW YORK MELLON, F/K/A The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5, its successors or assigns, is entitled to an Order terminating the Automatic Stay with respect to the subject real property because the Respondent has little or no equity therein inasmuch as the property is encumbered with secured debt equal to or in excess of the fair market value of the property.

8.

Continuation of the Automatic Stay pursuant to 11 U.S.C. §362(a) and Co-Debtor Stay pursuant to §1301 will cause a real and irreparable harm to Movant and will deprive Movant of the adequate protection to which it is entitled under 11 U.S.C. §§362 and 363.

9.

Because of the multiple and abusive filings of the Debtor and Co-Debtor and the substantial arrearage on the loan, Movant is seeking *in rem* relief pursuant to 11 U.S.C. § 362(d)(4); In Re Yimam, 214 B.R. (Bktcy D. Md. 1997); In Re Hall, 216 B.R. 702 (Bktcy E.D. N.Y. 1998); In Re Snow, 201 B.R. 968 (Bankr. C.D. Cal. 1996).  The facts show that Debtor has continually attempted to hinder and delay Movant's lawful recovery of the property.  Movant asks that this Court allow it to continue foreclosure proceedings and pursue any other remedies under state law without being in willful violation of 11 U.S.C. §362, if Debtor, or any of their beneficiaries or any party claiming an interest through the Debtor or Codebtor, by assignment, transfer, or otherwise, files a bankruptcy before Movant, its assignees or successors, completes its foreclosure sale and gains possession of the property.

WHEREFORE, Movant respectfully requests:

(a)    That the automatic stay under 11 U.S.C. § 362 and co-debtor stay under 11 U.S.C. § 1301 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b)    That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c)    *That pursuant to 11 U.S.C. § 362(d)(4), should the Court enter an Order granting in rem relief that the relief be binding in any other case under this title purporting to affect such real property for a period of two years from entry of such order;*

(d)    That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

(e)    That in the event of an Order granting relief from the automatic stay and said Order also instructing the Chapter 13 Trustee to cease disbursements on Movant's Proof of Claim, Fed. R. Bank. P. 3002.1 shall no longer apply as to Movant, as said Rule only applies in Chapter 13 cases in which claims secured by a principal residence are provided for under Section 1322(b)(5) of the Code in the Chapter 13 Plan; and

(f)    For such other and further relief the Court deems just and proper.

Date: January 12, 2021                                    **Logs Legal Group, LLP**

*/s/ Lucretia L. Scruggs*
Lucretia L. Scruggs
Georgia Bar No. 371008
211 Perimeter Center Parkway, NE
Suite 300
Atlanta, GA 30346
Phone: 770-220-2535
Fax: 770-220-2665
lscruggs@logs.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on 12th day of January, 2021, a copy of the foregoing

Motion for In-Rem Relief from Automatic Stay and Co-Debtor Stay was caused to be served

upon the following:


<u>Via CM/ECF Electronic Notice</u>
Melissa J. Davey
Melissa J. Davey, Standing Ch 13 Trustee
Suite 200
260 Peachtree Street, NW
Atlanta, GA 30303

<u>Via First Class Mail, Postage Prepaid</u>

Debtor
Noland Bernard Ballard
25 Alexandria Circle
Newnan, GA 30265

Co-Debtor
Allison Ballard
25 Alexander Circle
Newnan, GA 30265


Shapiro Pendergast & Hasty, LLP


  _/s/ Lucretia L. Scruggs_
Lucretia L. Scruggs 371008
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Telephone: (770) 220-2535
Fax: (770) 220-2665
lscruggs@logs.com

**EXHIBIT A**

BK 0 2 4 6 0 PG 0 2 7

FILED IN OFFICE
CLERK OF
SUPERIOR/JUVENILE
COURT

2004 MAR 30 PM 12: 55

CINDY G. BROWN, CLERK
COWETA COUNTY, GA



SLEPIAN & SCHWARTZ, L.L.C.
42 Eastbrook Bend
Peachtree City, Georgia 30269

After Recording Return To:
JANE DOCKMAN
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Prepared By:
NANCY BRADFORD

—————————————— [Space Above This Line For Recording Data] ——————————————

[Escrow/Closing #]                    [Doc ID #]

## SECURITY DEED

MIN

**GEORGIA INTANGIBLE TAX PAID**
$ 675.00
DATE 3|30 20 04
Cindy G. Brown
Clerk of Superior Court
Coweta County

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MARCH 26, 2004 , together with all Riders to this document.
**(B) "Borrower"** is
NOLAND B BALLARD, AND ALLISON BALLARD

Borrower is the grantor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
**(D) "Lender"** is
FULL SPECTRUM LENDING, INC.

**GEORGIA**–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11                                      Initials: NBB AB

VMP®-6A(GA) (0005).01   CHL (08/02)(d)  VMP MORTGAGE FORMS -           Form 3011  1/01
CONV/VA



BK02460PG028

DOC ID #: ▮

Lender is a CORPORATION
organized and existing under the laws of CALIFORNIA                           . Lender's address is
4500 Park Granada, Calabasas, CA 91302
**(E) "Note"** means the promissory note signed by Borrower and dated MARCH 26, 2004       . The
Note states that Borrower owes Lender
TWO HUNDRED TWENTY FOUR THOUSAND NINE HUNDRED and 00/100

Dollars (U.S. $ 224,900.00       ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than APRIL 01, 2034       .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] Waiver of Borrower's Rights |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)
conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or
any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not
that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and
modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely
as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with
power of sale, the following described property located in the

                COUNTY              of            COWETA                       :
        [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 25, OF THE
6TH DISTRICT, COWETA COUNTY GEORGIA, BEING LOT A-35 OF MOSBY WOODS
SUBDIVISION, PHASE A, AS PER PLAT RECORDED AT PLAT BOOK 58 PAGE 69 THRU
71, COWETA COUNTY, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART
HEREOF BY REFERENCE.



BK02460PG029

Parcel ID Number: 108B60251B08

DOC ID #: ▮▮▮▮▮
which currently has the address of

25 ALEXANDRIA CIRCLE, NEWNAN
[Street/City]

Georgia     30265     ("Property Address"):
[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns, and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(GA) (0005).01     CHL (08/02)     Page 3 of 11     Initials:      Form 3011 1/01

BK 0 2 4 6 0 PG 0 3 0

DOC ID #:

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

Initials: 

BK 0 2 4 6 0 PG 0 3 1

DOC ID #:

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to it's condition. Unless it is determined pursuant to

BK 0 2 4 6 0 PG 0 3 2

DOC ID #:

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.



BK02460PG033

DOC ID #:

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

Initials: 

Form 3011 1/01

BK 0 2 4 6 0 PG 0 3 4

DOC ID #:

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

-6A(GA) (0005).01      CHL (08/02)                Page 8 of 11                          Initials:                      Form 3011 1/01

BK 0 2 4 6 0 PG 0 3 5

DOC ID #:

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials:

BK 0 2 4 6 0 PG 0 3 6

DOC ID #:

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.**

**If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



BK 0 2 4 6 0 PG 0 3 7

DOC ID #: ▮▮▮▮▮▮▮

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ ___(Seal)
NOLAND B. BALLARD                              -Borrower

_____ ___(Seal)
ALLISON BALLARD                                  -Borrower

_____ ___(Seal)
                                                          -Borrower

_____ ___(Seal)
                                                          -Borrower

**STATE OF GEORGIA,**
Signed, sealed and delivered in the presence of:                    County ss:

_____
Unofficial Witness

_____
Notary Public,                                                          County
State of Georgia

REBECCA D. PITTS
NOTARY
My Comm. Expires
August 19, 2007
PUBLIC
FAYETTE COUNTY, GEORGIA

BK 0 2 4 6 0 PG 0 3 8

## EXHIBIT A (LEGAL DESCRIPTION)

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 25, OF THE 6TH DISTRICT, COWETA COUNTY GEORGIA, BEING LOT A-35 OF MOSBY WOODS SUBDIVISION, PHASE A, AS PER PLAT RECORDED AT PLAT BOOK 58, PAGES 69 THROUGH 71, COWETA COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

```
DOC# 001082
FILED IN OFFICE
01/23/2012   04:09 PM
BK:3746   PG:270-270
CINDY G BROWN
CLERK OF SUPERIOR COURT
COWETA COUNTY
```

This space for Recorder's use

| Recording Requested By: | When recorded mail to: |
|---|---|
| **Bank of America** | **CareLogic** |
| Prepared By: | **450 E. Boundary St.** |
| **Mary Ann Hierman** | **Attn: Release Dept.** |
| | **Chapin, SC 29036** |
| **450 E. Boundary St.** | |
| **Chapin, SC 29036** | |

Property Address:
**25 Alexandria Circle**
**Newnan, GA 30265-2237**

MIN #                              MERS Phone #

## ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2004-5** whose address is **101 BARCLAY ST - 4W, NEW YORK, NY 10286** all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

Original Lender:        **FULL SPECTRUM LENDING, INC.**
Made By:                **NOLAND B BALLARD, AND ALLISON BALLARD**
Date of Security Deed:  **3/26/2004**
Original Loan Amount:   **$224,900.00**

Recorded in **Coweta** County, **GA** on: **3/30/2004**, book **02460**, page **027** and instrument number **N/A**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on
_1-18-2012_

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _Martha Munoz_                    By: _[signature]_
Martha Munoz Vice President            Swarupa Siee Vice President

Witness: _Dominique Johnson_           Witness: _Beverly Brooks_

State of California
County of Ventura

On _1/18/12_ before me, **Lori Filipa Kosor** , Notary Public, personally
appeared _Martha Munoz_ and _Swarupa Siee_ , who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_[signature]_ Lori Filipa Kosor
Notary Public: **Lori Filipa Kosor**          (Seal)
My Commission Expires: _Nov 9, 2013_

```
LORI FILIPA KOSOR
Commission # 1870831
Notary Public - California
Ventura County
My Comm. Expires Nov 9, 2013
```

6646558108
PARTICIPANT ID

BK:5059 PG:71-86

D2020011338

FILED IN OFFICE
CLERK OF COURT
06/03/2020 12:53 PM
CINDY BROWN, CLERK
SUPERIOR COURT
COWETA COUNTY, GA

*Cindy S. Brown*

**PREPARED BY AND
RETURN TO:**
SHAPIRO PENDERGAST & HASTY, LLP
211 Perimeter Center Parkway, N.E., Suite 300
Atlanta, GA 30346
███████
Tax ID # ███████

PLEASE CROSS REFERENCE TO Deed
Book **2460**, Page **27**, COWETA County records,
**State of Georgia.**

**STATE OF** _____ California
**COUNTY OF** _____ Orange

**17-067679 FC07/Ballard, Allison and Ballard, Noland B.**

MERS MIN # ███████
Phone# ███████
MERS Address: P.O. Box 2026, Flint, MI 48501-2026

**CORPORATE ASSIGNMENT**

FOR VALUE RECEIVED, **The Bank of New York Mellon FKA The Bank of New
York as Trustee for the Benefit of the Certificateholders of the CWABS, Inc., Asset-Backed
Certificates, Series 2004-5** hereby transfers, assigns, conveys and delivers to **THE BANK OF
NEW YORK MELLON, F/K/A The Bank of New York as trustee for registered Holders of
CWABS, Inc., Asset-Backed Certificates, Series 2004-5**, whose address is C/O Carrington
Mortgage Services, LLC, **1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806**
(hereinafter referred to as Assignee), a certain Deed to Secure Debt (hereinafter called Deed) dated
**March 26, 2004**, executed by **Noland B Ballard and Allison Ballard** (grantor) to **Mortgage
Electronic Registration Systems, Inc., as grantee, as nominee for Full Spectrum Lending, Inc.,
its successors and assigns** (grantee), said Deed being recorded in Deed Book **2460**, page **27**,
**COWETA** County Records, State of Georgia; and does hereby assign, transfer, and convey to the
said Assignee all of the property in the said Deed, together with all the rights, powers and privileges
therein contained in as full, ample and complete manner as the undersigned is authorized to exercise
the same.

17-067679 FC07

BK:5059 PG:72

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized corporate officers as on the 27 day of May , 2020.

**Carrington Mortgage Services, LLC, as Attorney in Fact for The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2004-5**

Signed and delivered
in the presence of:

By: _____

(1) _____ Priscilla Pedrazo
(Unofficial Witness)

Title: Ami Bhavsar
Supervisor Pre-Foreclosure Compliance

Attest: _____

Title: Director of Foreclosure

(2) _____
Notary Public    Marla D. Ahumada

Wesley Cooper
Director of Foreclosure

My Commission Expires: Sept. 25, 2023

NOTARY SEAL

MARIA D. AHUMADA
Notary Public - California
Los Angeles County
Commission # 2303293
My Comm. Expires Sep 25, 2023

17-067679 FC07

**EXHIBIT B**

Prepared by: NANCY BRADFORD



# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MARCH 26, 2004              NEWNAN                              GEORGIA
[Date]                      [City]                              [State]

25 ALEXANDRIA CIRCLE, NEWNAN, GA 30265
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $224,900.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
FULL SPECTRUM LENDING, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.500   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first        day of each month beginning on
MAY 01, 2004        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 01, 2034        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,572.53         . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first        day of APRIL, 2007        , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

GEORGIA ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family

CONV
● BC - ARM Note
2D165-GA (08/02)(d)

Initials: 




LOAN #: [redacted]

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN & SEVEN-EIGHTHS percentage point(s) ( 7.875 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.000 % or less than 7.875 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 14.500 % or less than 7.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment without paying any penalty. If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full or a Partial Prepayment at any time. However,

[X] I may prepay this Note in full at any time without penalty.

[ ] If within the first _____ months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

CONV
● BC - ARM Note
2D165-GA (08/02)

Initials:

 

LOAN #: ▮▮▮▮▮▮

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
NOLAND B. BALLARD                                -Borrower

_____ (Seal)
ALLISON BALLARD                                  -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY _____
David A. Spector
Managing Director

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS
WITHOUT RECOURSE
FULL SPECTRUM LENDING, INC.
BY _____
David A. Spector
Managing Director
Countrywide Home Loans, Inc.
as Attorney-in-Fact for Full Spectrum Lending, Inc.

CONV
● BC - ARM Note
2D1B5-GA (08/02)

RECORDING REQUESTED BY:
**BAC Home Loans Servicing, LP**
**Attn Home Retention Division: CA6-919-01-43**
**400 Countrywide Way**
**Simi Valley, CA 93065**

Loan #: ███████

-----------------------------------------------FOR INTERNAL USE ONLY------------------------------------------------

# LOAN MODIFICATION AGREEMENT
## (Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 11th day of June 2010, between NOLAND B BALLARD, ALLISON BALLARD  and BAC Home Loans Servicing, LP (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), dated the 26th day of March 2004 and in the amount of $224,900.00 and (2) the Note bearing the same date, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 25 ALEXANDRIA CIRCLE, NEWNAN, GA 30265.

SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1    As of the 1st day of August 2010, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $244,915.20 consisting of the amount(s) loaned to the Borrower by the Lender which may include, are not limited to, any past due principal payments, interest , fees and/or costs capitalized to date.

2    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of 2.000% from the 1st day of July 2010.  The Borrower promises to make monthly payments of principal and interest of U.S. $1,080.25 beginning on the 1st day of August 2010, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on the 1st day of April 2034 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3    The Borrower will make such payments at  PO Box 515503, Los Angeles, CA 90051-6803 or at such other place as the Lender may require.

4    Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5    In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as Documents. Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing

_Noland B Ballard_ _____         _6/11/2010_
NOLAND B BALLARD                                           Dated

_Allison Ballard_ _____            _06/11/2010_
ALLISON BALLARD                                           Dated

CHARLES E. ASHLEY
NOTARY PUBLIC
Dekalb County
State of Georgia
My Comm. Expires December 30, 2013

STATE OF _Georgia_
COUNTY OF _DeKalb_
On _6/11/2010_ _____ Before _Charles E Ashley_
Notary Public, personally appeared _Noland B Ballard + Allison Ballard_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.  _Charles E Ashley_ _____
                                                    Signature

BAC Home Loans Servicing, LP

By: _____

Dated: _____

STATE OF _____

COUNTY OF _____

On _____ Before _____

Notary Public, personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

_____

Signature